I would like to address two issues and reserve five minutes for rebuttal. So turning to the first issue, I would like to address the supplemental authority that the government has provided and that is the case of United States v. Lizarraga, Toronto. And that was the case where the court held, the Ninth Circuit held that the GPS, I'm sorry the Google map that indicated a location of GPS coordinates was not hearsay because the assertion was not made by a person. That case conflicts with other circuits that have found that even where there is a small amount of human involvement and the analysis is done mostly by a machine, that it still falls within the hearsay rules. And in Appellant's reply brief, we listed several of those cases but there are two that are real close to the case that the government has provided that I would like to address. And those are United States v. Blackburn and United States v. Enterline. Well, you're free to discuss those but are you trying to argue that Lizarraga, Toronto is wrong? That's correct, Your Honor. I believe that the more persuasive rationale is to follow these other circuits that have found that where there is human participation, even minimal and especially in the case of Blackburn, even arguably pretty objective human participation in that case, the person's role was simply to place a pair of eyeglasses into a lensometer which would then, using light, take measurements of the prescription. And so the machine, and they're actually, yes? We can't say that Lizarraga is wrong. I understand your argument but it seems like you have to take that to an en banc panel and not to this panel. Because we have to accept and apply Lizarraga. And so if we have to accept and apply Lizarraga, I guess what's your next argument? If it's correct, I mean if we have to follow that, and we're bound by that, do you lose? Well, then the Ninth Circuit will be in conflict with other circuits that have held that even minimal human participation, that is arguably very objective, makes the hybrid computer and human generated report. Well, it wouldn't be the first time then. Well, yeah, we've been out of stepping stones. And the Supreme Court will definitely let us know if it disagrees. But for now, we're bound by a precedent. So does that end this case for you? If you were to strictly follow the analysis and the holding that, well, it does not, to Not only was this machine generated, but this was also a report that was requested by the government as part of strictly for the purposes of this investigation. And so I would fall back on that and turn to my second point, which is turning to the possession charge here. And both parties addressed this in the briefing, but if this court were to sort out the evidence of how a controlled delivery is generally conducted from the evidence of the facts of what was done in this case when agents intercepted this package and took out, there was actually a lot of litigation in this case, a lot of argument over all, you know, the government had control of these drugs for, since they intercepted the package and they removed it, they removed the drugs. And then there is no evidence that the package that actually arrived at Falk Circle contained any drugs at all. That package that arrived was never tested. There was no evidence that a certain amount of drugs was put back in the package as a representative sample. So the evidence regarding the amount, I'm sorry, regarding the drugs that actually arrived never tested positive. And for that reason, because this is not an attempted possession charge, it is a possession charge, the government did not meet its burden of proving that any amount of drugs arrived at the residence. But wasn't there evidence that there was, there were, there was a trace amount of drugs in the package? Was there any testimonies to that? Your Honor, our position is that there is not. In the transcript at page 148 to 149, and this is the clerk's record, 158, because there were actually several volumes, is the government's only evidence of that alleged trace amount. And what they're talking about is in general terms, is how we do a controlled delivery. We usually use rock salt as the fake sham drug. And they say in a controlled delivery we replace the trace amount, but they never said we replaced a particular amount in this case, or we tested the package that trace amount. So it is our position that they were just discussing in general terms and not specifically prove that in this case there were any drugs in the package. Even so, if the government testifies about habitual processes, isn't that enough to allow the finder of fact to credit that evidence? Your Honor, we would disagree because you can talk about how you generally do something, but to prove beyond a reasonable doubt that there were drugs in this particular package is different than saying this is generally how it is done. Just for example, the rock salt. They say we generally use rock salt. That doesn't mean that they use rock salt in this case, and in fact they didn't say that they use rock salt in this case. They say normally we do this. Sometimes we do it differently. So I thought the Postal Inspector testified that the meth was removed and replaced with a combination of fake narcotics and an original sample of the meth. The testimony is? I'm looking at SCR volume 119. And if you want to look at that when you sit down, that's fine. Sure, I'll do that. But if you could look at that. So that's SCR volume 119? If that's true, if a Postal Inspector testified that the drugs were removed and replaced with a combination of fake narcotics and an original sample of the meth, would that be sufficient evidence? Well, if that's what the Postal Inspector, and I'll take your word for it that if that is the testimony, that is still not sufficient to say that it was a detectable amount. And I have still no evidence that a detectable amount actually arrived at the residence. So I would say that no, there was not sufficient evidence that a detectable amount arrived. Even if we have to look at the evidence, the light will stay on? Correct. And I'll reserve the rest of my time. All right. Thank you, Counsel. May it please the Court, Counsel. My name is Stephanie Corder. I represent the United States in this matter. I think Your Honors hit the nail on the head with the IP report. I think Lizarraga is controlling in this particular case. In that case, it was obviously the Google Earth case where the agent put in the GPS coordinates and then the attack was placed there by the program itself. And I think that's exactly what happened here. All Inspector Page did was enter the tracking number for this particular package. And what came out was a computer generated printout of what IP addresses had checked that particular tracking number. And I think Counsel's point that following Lizarraga would put the Ninth Circuit out of step with other circuits is incorrect when you look at some of the other authority that was cited in the government's brief. The Fourth Circuit in the United States versus Washington made a similar holding to the circuit's holding in Lizarraga. The Tenth Circuit in the U.S. versus Hamilton and the Eleventh Circuit in the U.S. versus Obama. Is the Supreme Court going to have to straighten this out? It looks like we may have to go that route at some point. But I think at this point, it's clear that the District Court properly exercised its discretion in admitting a particular IP report. Did the government call a witness to testify regarding the maintenance of the product tracking system database to authenticate this reverse lookup report? There was no witness who testified as to the maintenance of that particular machine or anything like that. Inspector Page, however, did testify that he maintained the database as part of his particular job with the Postal Inspection Service and that the database was as a product tracking system database. This is no different than a database with FedEx or UPS or anything else where you would track and see, you know, where your package is in the delivery system. And there was no challenge to authentication. I'm sorry. There was no challenge to the authentication. Correct. That was going to be my second point is that in this particular case, there was no challenge to the authentication, not at the trial level below and not in the briefing at this point. So I think at this point, we're well past the authentication step and to the extent that there needed to be some background supplied, it was supplied in this particular case by Inspector Page through his testimony. Could we go to the sufficiency of the evidence issue and specifically opposing counsel's position that there was not any evidence of a detectable amount of narcotics that was Sure. Absolutely. And I think Your Honor was right on point when you were citing that particular part of the record and it is SDR pages 18 and 19, which is Inspector Dallas's testimony. She was the first witness called by the government and she was there to explain not only how a controlled delivery generally works, but how it worked in this particular case. And the operative quote is that in this case, and she again says, in this case, we removed the methamphetamine and placed in the package what we call sham, which is fake narcotics to represent meth. She goes on to say, we replaced an original sample of the meth in the package. So what does an original sample mean? I think that was opposing counsel's point that even if there was testimony that an original sample or a trace amount or some other undefined term issues, how does that equate to a detectable amount? Your Honor, I think what happens in these particular cases and the testimony was that they put a representative sample, a small amount of the methamphetamine. They don't want to put a large amount of methamphetamine and the off chance that they are not able to get it. How do we know how much? I don't think there was testimony as to particularly how much, but I don't think that's the issue because the possession with the intent statute is a mixture and substance containing a detectable amount of methamphetamine. That's what the standard says. It doesn't say it has to be a particular amount, a particular weight, a particular purity. It's a mixture and substance containing a detectable amount of methamphetamine and that's what you have in this case. You have the fact that the overall meth that was taken out of the package was 100% pure and then part of that was then put in with the sham and that combined together is a mixture and substance that would contain a detectable amount of methamphetamine. So I think based on that, there is sufficient evidence, especially in light of the standard that is in fact the light most favorable to the government. I think given that, there is sufficient evidence in this particular case to find that in fact Mr. Gonzalez did possess methamphetamine with the intent to distribute. There's obviously a great deal of intent evidence as well. I can go through that if your honors have questions. The record is pretty clear. The other point on sufficiency of the evidence that the appellant raised in the briefing was, was there an agreement? Or was this really just Mr. Gumateo-Teo and Mr. Gonzalez happened to just be there and that was enough? And I think if you look at the evidence in this case, there is sufficient evidence on agreement. I mean, obviously conspiracies are loosely knit. You're not going to get a written agreement or a contract to participate in a particular conspiracy. But in this particular case, you have Mr. Gumateo-Teo and Mr. Gonzalez. They came to the residence together, twice. The box was only opened after both co-conspirators were inside the house, had only been inside the house approximately five minutes at that time. There was more than one pair of gloves found in the residence. Obviously there was Mr. Gumateo-Teo that was found with a clue spray on it. But there were also additional pairs of gloves found in the bathroom of the residence, one pair of which had been turned inside out, indicating that it had recently been removed from somebody's hand and had in fact a piece of packaging material attached to it. There were multiple boxes that were sent as part of the conspiracy that followed a similar pattern and bore similar characteristics. This one in particular was addressed to Dave. The only Dave who was at the residence that day was David Gonzalez. The other boxes were also addressed in some cases to Dave or my case from Albie G, which is arguably the inferences that that's Albert Gumateo-Teo. It's just an abbreviation. Obviously Mr. Gonzalez's phone had a contact inside both for Albert and for Albert Gumateo-Teo, the entire name of the co-defendant. And that's SDR 228. The picture of the tracking number was on Mr. Gonzalez's phone. And it was, of course, as alluded to in the first argument, the IP address comes back to Mr. Gonzalez that actually tracked on the particular package. So I think if you look at all of those particular things, I think you get to agreement. We've addressed possession. And I think there's also a great deal of evidence on intent. And unless Your Honor's got questions, I won't detail that. But I think there is sufficient evidence in this particular case to affirm the decision below. Any other questions? Appears not picky counsel. Thank you. So turning first to the Inspector Dellis' testimony, I would just repeat what I said a few minutes earlier, that this is a generalization of what we normally do. And it is not clear from this testimony that any detectable amount was placed in the package that arrived at Falk Circle. And certainly, the package that arrived at Falk Circle was never tested. But you just said the exact opposite. The inspector specifically said that the sample contained a detectable amount. I have, from Clerk's Record 158, pages 148 and 149, I have different page numbers than what you have. Is that the actual testimony? It's the actual testimony. They talk about the rock salt that they normally use. And then it says, we replaced the original sample of the meth in the package. Go to the page before that says, in this case. Do you see that? I only have the one page. But my recollection of the transcript in this case was that they talk generally about what they do, but then the package that arrived was never tested. So whether or not they think that they put in a detectable amount, it was never tested. But if the inspector says, in this case, we replaced the meth with a fake substance plus a sample of the original seizure, why wouldn't that be sufficient evidence of what happened in this case, not generally? Well, then we're taking the inspector's word that that amount that they placed in was detectable. How would you place an indetectable amount? Well, my understanding, I've never witnessed one of these, but my understanding is it's an incredibly small amount because they want to hang on to the volume of the substance. And I mean, it was described in trial as a, with the attorneys talking about it in an argument, described it as a pinprick. So it is indeed a very tiny amount, is my understanding, a very tiny amount that might not be detectable. I also wanted to address, since I see I'm almost out of time, Inspector Page does not maintain the database. In fact, they stopped his testimony and talked about a woman whose name I don't have at the top of my head, but a woman who maintains the database and is sort of the records custodian who they might have to call. And then what Inspector Page said is that he maintains the records. So he maintains these reports that have been generated. He does not maintain the database. Okay. And then finally, in my last few seconds here, I would point out that some of this evidence that the government discussed, the extra gloves, there were other people in the residence as well. There were lots of people who came and went from the residence, including a Mr. Irving Grinder, who was not charged in this case, but was also present when the authorities arrived. Counsel, let me ask you this about the database. There was no challenge to the authenticity or the accuracy of the database, was there? Well, I think that trial counsel focused on the fact that it wouldn't come in because it was hearsay. And there was actually quite a bit of discussion about that. And as I said, the first day that Inspector Page testified, they actually paused his testimony and talked about whether this records custodian would be called. And so, yeah, you are correct that I do not recall them objecting on other grounds because they had a strong hearsay objection. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Murguila, Schroeder